THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID CARLSON, an individual, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC; and DOES 1 through 10, inclusive,<br><br>                Defendant. | Case No. 3:23-cv-5722-RJB<br><br>**DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**NOTE OF MOTION CALENDAR: NOVEMBER 5, 2024** |

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB

-1-

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

## TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................... 1

II.  FACTS AND PROCEDURAL BACKGROUND .......................................... 1

  A.  **The Parties, Putative Class, and Plaintiff's Claim** ........................... 1

  B.  **Sleeper Berths** .................................................................................... 3

  C.  **Swift's Policies Regarding Off-Duty and Sleeper Berth Time** .......... 3

  D.  **Swift's Compensation System** ............................................................ 7

  E.  **Team Drivers and Mentors** ................................................................ 8

III.  ARGUMENT ................................................................................................ 8

  F.  **Individual Choice of Law Questions Preclude Class Certification** ............. 9

    1.  Common Issues Do Not Predominate and Class Proceedings are not Superior as to Whether Putative Class Members Are "Washington-based" Employees ............................ 10

  G.  **Plaintiff's Theory That Putative Class Members Are Not Exempt from Overtime Cannot Be Certified Under Rule 23** ................................ 14

  H.  **Plaintiff's Theory that PCMs Are Continuously Engaged in Compensable Work Time Cannot Be Certified Under Rule 23** ................ 17

    1.  Common Issues Do Not Predominate and Class Proceedings Are Not Superior as to Whether Putative Class Members had Unrecorded Compensable Time ............................ 18

    2.  Common Issues Do Not Predominate and Class Proceedings Are Not Superior as to Whether PCMs Were Paid Less than the Amounts Required by Washington Law ............ 23

IV.  CONCLUSION ............................................................................................ 24

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB

-1-

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1

## TABLE OF AUTHORITIES

2                                                                                                    Page(s)

Cases

3

*Amchem Prod., Inc. v. Windsor*
4      521 U.S. 591 (1997)....................................................................................................9

5   *Anderson v. State, Dep't of Soc. & Health Servs.*
       115 Wash. App. 452 (2003).......................................................................................23
6

7   *Ayala v. U.S Xpress Enterprises, Inc.*
       2016 WL 7586910 (C.D. Cal. 2016)..........................................................................13
8

*Blodgett v. FAF, Inc.*
9      446 F. Supp. 3d 320 (E.D. Tenn. 2020)......................................................................20

10  *Bostain v. Food Exp., Inc.*
       159 Wash. 2d 700 (2007)..............................................................................10, 12, 16
11

12  *Bouissey v. Swift Transportation Co.*
       2023 WL 3400620 (C.D. Cal. 2023)......................................................................20, 23
13

*Browne v. P.A.M. Transp., Inc.*
14     2018 WL 5118449 (W.D. Ark. 2018)..........................................................................21

15  *Burnell v. Swift Transportation Co of Arizona, LLC*
       2016 WL 2621616 (C.D. Cal. 2016)............................................................................16
16

17  *Comcast Corp. v. Behrend*
       569 U.S. 27 (2013)........................................................................................................9
18

*FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*
19     180 Wash. 2d 954 (2014).............................................................................................10

20  *Gen. Teamsters Loc. No. 174 ex rel. Gasca v. Safeway, Inc.*
       156 Wash. App. 1003 (2010)........................................................................................17
21

22  *Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*
       2013 WL 1661483 (W.D. Wash. 2013).......................................................................19
23

*Haley v. Medtronic, Inc.*
24     169 F.R.D. 643 (C.D. Cal. 1996)...................................................................................9

25  *Helde v. Knight Transp., Inc.*
       982 F. Supp. 2d 1189 (W.D. Wash. 2013)..............................................................15, 16
26

27  *Huerta v. CSI Elec. Contractors*
       15 Cal. 5th 908 (2024)..................................................................................................19

28

*Julian v. Swift Transportation Co. Inc.*
  360 F. Supp. 3d 932 (D. Ariz. 2018) ..................................................21

*Kennedy v. LTI Trucking Servs., Inc.*
  2019 WL 4394539 (E.D. Mo. 2019)..................................................20

*Levias v. Pac. Mar. Ass'n*
  760 F. Supp. 2d 1036 (W.D. Wash. 2011)..........................................18

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ...........................................................9

*Mendis v. Schneider Nat'l Carriers Inc.*
  2016 WL 6650992 (W.D. Wash. 2016)...............................................16

*Mendis v. Schneider Nat'l Carriers, Inc.*
  2017 WL 497600 (W.D. Wash. 2017) ...............................................11

*Mynatt v. Gordon Trucking, Inc.*
  182 Wash. App. 253 (2014)........................................................15, 16

*Nance v. May Trucking Co.*
  2014 WL 199136 (D. Or. 2014).......................................................20

*Nance v. May Trucking Co.*
  685 F. App'x 602 (9th Cir. 2017) ....................................................20

*Pavloff v. Cardinal Logistics Mgmt. Corp.*
  2020 WL 6821072 (C.D. Cal. 2020)..................................................19

*Petrone v. Werner Enterprises, Inc.*
  2017 WL 510884 (D. Neb. 2017) ....................................................20

*Sali v. Corona Reg'l Med. Ctr.*
  909 F.3d 996 (9th Cir. 2018) ...........................................................9

*Sampson v. Knight Transportation, Inc.*
  193 Wash. 2d 878 (2019)...............................................................24

*Sampson v. Knight Transportation, Inc.*
  2018 WL 2984825 (W.D. Wash. 2018)....................................10, 11, 12

*Sampson v. Knight Transportation, Inc.*
  2022 WL 4598488 (W.D. Wash. 2022)....................................14, 16, 17

*Sanders v. Western Express*
  2022 WL 1800778 (E.D. Wash. 2022) ...................................... 12, 21

*Senne v. Kansas City Royals Baseball Corp.*
  934 F.3d 918 (9th Cir. 2019) ...................................................9, 10

*Slack v. Swift Transp. Co. of Arizona, LLC*
    2013 WL 6095548 (W.D. Wash. 2013) ..................................................10, 12, 14

*Stevens v. Brink's Home Sec., Inc.*
    162 Wash. 2d 42 ..........................................................................................18, 22

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ..............................................................................14

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 ................................................................................................8, 9, 15

*Wooldridge v. Gateway Transportation of Georgia, Inc.*
    2019 WL 2610904 (N.D. Ga. 2019) ...................................................................21

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001) ..............................................................................9

<u>Statutes</u>

49 U.S.C. § 113(f) ........................................................................................................4

49 U.S.C. § 3101 et seq. ...............................................................................................2

49 U.S.C. § 10101 et seq. .............................................................................................2

Idaho Code § 44 *et seq.* ..............................................................................................11

RCW 49.46.130(1) ......................................................................................................16

RCW 49.46.130(2)(f) ...............................................................................11, 15, 16, 17

<u>Other Authorities</u>

29 C.F.R. § 785.2 ........................................................................................................20

29 C.F.R § 785.22 ..........................................................................................19, 20, 21

29 C.F.R. § 785.41 .................................................................................................20, 21

49 C.F.R. § 395.2 ..........................................................................................................4

29 CFR 785.22 ........................................................................................................3, 24

83 FR 26377 .................................................................................................................4

Ore. Admin. Rule 839-020-0125(3)(a) .......................................................................11

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION     -3-     Sheppard, Mullin, Richter & Hampton LLP
FOR CLASS CERTIFICATION     Four Embarcadero Center, 17th Floor
CASE NO. 3:23-cv-5722-RJB     San Francisco, CA 94111 | Tel. 415.434.9100

Restatement (Second) of Conflict of Laws § 145 (1971) ..........................................11, 13

Fed. R. Civ. P. 23 ...............................................................1, 8, 9, 14, 15, 17, 18

WAC § 296–126–002(8) .................................................................18

WAC § 296-126-021.................................................................23, 24

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB

-4-

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

## I.  **INTRODUCTION**

Plaintiff's single claim for unpaid overtime under Washington state law arises from two allegations.  First, that Defendant Swift Transportation's employee over-the-road drivers are not exempt from overtime under Washington's motor carrier exemption; and second, that the drivers are engaged in compensable work time 24 hours a day, 7 days a week, when they are out on the road making deliveries, no matter where they are or what they are doing.  Neither of these issues can be resolved with common evidence.  Individual questions predominate with respect to whether Washington law applies to Plaintiff's claims, and there is no uniform policy or practice that will answer whether any driver was engaged in compensable "hours worked" at any particular time.  Plaintiff's apparent position that Swift must pay actual overtime wages (i.e. a distinct additional amount) to qualify for the Washington motor carrier exemption from overtime is circular and legally incorrect, but to the extent this is Plaintiff's theory, individual analysis is required to determine whether each putative class member received compensation reasonably equivalent to overtime and is therefore overtime exempt.  Plaintiff has therefore failed to satisfy his burden of demonstrating that all of the conditions of Rule 23 are satisfied and his motion for class certification should be denied.

## II.  **FACTS AND PROCEDURAL BACKGROUND**

### A.  **The Parties, Putative Class, and Plaintiff's Claim**

Swift is a commercial motor carrier headquartered in Phoenix, Arizona.  Swift employs thousands of truck drivers throughout the United States.  Tillman Dec. ¶ 2.  Plaintiff David Carlson is employed as an over-the-road truck driver for Swift.  *Id.* ¶ 4.  Plaintiff is a Washington resident, but he is assigned to a home terminal in Lewiston, Idaho.  *Id.*; Ellis Dec., Ex. 3 at 10:6-12, 20:5-25, 22:20-24.  Plaintiff drives as part of a team with his son, who is also employed by Swift as a driver.  Ellis Dec., Ex. 3 at 62:4-8; Plaintiff testified at his deposition that in the few weeks prior

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 1

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1  to the deposition he spent less than 5% of this working time in Washington, that he has spent

2  months on the road away from Washington, and that less than half of his total work time is in

3  Washington.  Ellis Dec. Ex. 3 at 51:14-54:11.  Prior to April 2024, Plaintiff was assigned to a Swift

4  terminal in Sumner, Washington and drove regionally in Washington, Idaho, and Oregon.  *Id.* at

5  22:25-23:23.

6        Like Plaintiff, many of Swift's Washington resident employee drivers are assigned to a

7  home terminal in Lewiston Idaho or Troutdale Oregon.  Compendium of Evidence (COE) #2.

8  Many of Swift's Washington resident employee drivers are over the road drivers who spend the

9  large majority of their work time outside Washington.  COE #1.  For example, putative class

10  member Aaron Anglin spends at least 95% of his working time outside Washington.  Anglin Dec.

11  ¶ 3.  Putative class member Joe Giles spends only 25% of his working time in Washington,

12  primarily to administer road tests to new drivers—meaning he is not away from home or working

13  long hours.  Giles Dec. ¶ 3.  Putative class member Kenneth Williams formerly worked as an over-

14  the-road driver who drove in Washington for only 10% of his worktime.  Williams Dec. ¶¶ 4-5.

15        Plaintiff's complaint asserts a single cause of action arising under Washington state law

16  for failure to pay overtime under RWC § 49.46.130.  Dkt. 1-5 ¶¶ 21-24.  Plaintiff alleges that by

17  "paying on a per mile or per delivery basis but not paying for overtime, despite Plaintiff and Class

18  members driving over 40 hours per week, Defendants violated Washington overtime law."  *Id.* ¶

19  23.  Defendant's answer asserts as an affirmative defense that its employee drivers are exempt

20  from Washington's overtime laws pursuant to RWC § 49.46.130(f) because they are paid the

21  reasonable equivalent of overtime.[1]  Dkt. 3 ¶ 21.

22

23  _____

24  [1] RWC § 49.46.130(f) provides that the Washington Minimum Wage Act's overtime requirement "does not apply to … [a]n individual employed as a truck or bus driver who is subject to the provisions of the Federal Motor Carrier Act (49 U.S.C. Sec. 3101 et seq. and 49 U.S.C. Sec. 10101 et seq.), if the compensation system under which the truck or bus driver is paid includes overtime

1  **B.    Sleeper Berths**

2         Most of Swift's employee drivers' trucks are equipped with a sleeper berth that has a bed,

3  and sometimes a small kitchen.  Tillman Dec. ¶ 5.  Swift does not require drivers to spend the night

4  in their truck's sleeper berth.  COE #3.  Swift's written solo sleeper berth policy states: "you are

5  not required to sleep in the truck's sleeper berth.  The sleeper berth is provided as a convenience

6  for our drivers."   Tillman Dec., Ex. 1.   The same policy states "[u]nder 29 CFR 785.22, if

7  applicable, hours worked excludes 30 minutes off duty breaks and 8 hours of sleeper berth time."

8  *Id.*  A similar policy for trainees and team drivers includes the same statement.  Tillman Dec., Ex.

9  3.  These policies were applicable throughout the proposed class period.  Tillman Dec. ¶¶ 5, 14.

10        Plaintiff and many putative class members (PCMs) agree that Swift does not require drivers

11  to spend the night in their sleeper berth while out on the road and that they can and do arrange for

12  alternative lodging.  COE #3-4.  PCMs declare that they have spent the night at home, a hotel or

13  with family while on the road.  *Id.*  For example, PCM James Dahl explains "I sometime stay with

14  my aunt and uncle in Enumclaw, Washington while out making deliveries.  I have also stayed in a

15  hotel while on the road.  I can also go home if I am close enough, which I have sometimes done

16  during trips."  Dahl Dec. ¶ 8.  PCM Brian Smith similar declares "I live in the Tacoma area, and I

17  would go home . . .  and spend the night there to do my ten hour resets while I had a loaded trailer

18  and was not on home time."  Smith Dec. ¶¶ 7, 9.  PCMs who do use their sleeper berth (including

19  Plaintiff) acknowledge that they could sleep somewhere else and they would not be in violation of

20  any Swift rules or policies by not sleeping in the sleeper berth—the choice was theirs.  COE #3,

21  Ellis Dec., Ex. 3 at 64:6-12.

22  **C.    Swift's Policies Regarding Off-Duty and Sleeper Berth Time**

23

24  pay, reasonably equivalent to that required by this subsection, for working longer than forty hours
per week."

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 3

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

The FMCSA is an arm of the Department of Transportation that regulates (among other things) the hours of service of truck drivers in interstate commerce. 49 U.S.C. § 113(f); 49 C.F.R. Part 395. All of Swift's employee drivers are covered by the FMCSA. COE #5. The FMCSA's regulations governing drivers of property carrying vehicles recognize four primary duty statuses: driving, on-duty (not driving), off-duty, and sleeper berth. 49 C.F.R. §395.2. There is also a personal conveyance status that may be used when a driver operates a truck for personal, non-work related transportation. 83 FR 26377.

"Driving" time is defined as "all time spent at the driving controls of a commercial motor vehicle in operation." 49 C.F.R. §395.2; Tillman Dec. ¶ 7. "On-duty (not driving)" time means "all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work." *Id.* Time that is neither driving time nor on-duty (not driving) time is recorded as "off-duty," or "sleeper berth" if the driver is resting in a sleeper berth. *Id.* As holders of Class A Commercial Driver Licenses, all PCMs are required by law to know these rules as a condition of that license. COE #6.

The personal conveyance status can be recorded when an employee driver uses their Swift truck for personal use and is considered a subset of the off-duty status. COE #22 Personal conveyance cannot be used for driving that advances a load to its destination or advances the interests of Swift in any way. COE #23. Drivers do not need permission from Swift to use the personal conveyance status. Many PCMs, and Plaintiff, have used the personal conveyance status to run errands or buy groceries while on the road during off-duty time.[2] COE #22.

---

[2] Plaintiff's declaration in support of class certification states that "[w]hen I drove on an over-the-road trip more than 25 miles from my home residence, I was not permitted to use Swift Transportation Co. of Arizona, LLC's ('Swift') truck for personal purposes." Dkt. 30-2 ¶ 3. At his deposition, Plaintiff acknowledged that this statement in his declaration is false and that he has used the personal conveyance status as an over-the-road driver. Ellis Dec. Ex. 3 at 148:5-149:15.

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 4

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1    Swift's drivers are required to carry an "off-duty authorization form" in their vehicles that

2    further clarifies that, when a driver is logged in an off-duty status, "you are relieved from

3    responsibility from your vehicle and cargo."  COE #11: Tillman Dec., Ex. 2.  Once the driver's

4    truck is parked and secure, drivers are free to leave the premises where their truck is parked to

5    pursue activities of their own choosing while logged as off-duty. Id; COE #9, 15-16.  Many PCMs

6    testified that they are familiar with the off-duty authorization form and carry it in their truck in a

7    permit book.  COE #11.

8    Swift requires strict compliance with the FMCSA's hours of service rules.  COE #6.

9    Failing to comply with the FMCSA's hours of service regulations or falsifying hours of service

10   logs is grounds for discipline and termination.  *Id.*  Swift's drivers are instructed to log all of their

11   time truthfully and accurately in accordance with Swift's policies and the FMCSA's regulations.

12   *Id.*  Drivers are able to correct their logs if there are ever any errors, and several PCMs testified to

13   making corrections.  COR #7.  PCMs are automatically put into the driving status if they drive

14   over a certain very low minimum speed.  COE #8.

15   PCMs acknowledge that the foregoing accurately reflects Swift's policies and

16   expectations.  COE #5-19.  For example, PCM Dahl states that "[k]nowing and complying with

17   the hours of service rules is part of my job and required by Swift and by law" and "Swift has told

18   me that if any logs are falsified, you will be fired with no second chance."  Dahl Dec. ¶ 4.  PCM

19   Graysen Gorden similarly declares "[a]s Swift driver, I am required to follow the federal hours of

20   service rules" and "Swift requires our logs to be accurate and to certify our logs regularly."  Gorden

21   Dec. ¶¶ 4-5.

22   PCMs further agree that sleeper berth time is time in which they are relieved of all

23   responsibility and are not required to be in work readiness.  COE #10; *see*, *e.g.*, Giles Dec. ¶ 10

24   ("Swift does not have any control over me when I log time as sleeper berth.  I consider the space

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 5

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

in front of the curtain separating the sleeper berth from the chairs to be work, and the space behind

the curtain in the sleeper berth to be my home non-work time.  I tell the drivers I train this same

thing."); Anglin Dec. ¶ 10 ("When I log my time as sleeper berth it means I am off duty and able

to I understand that when I log time as sleeper berth, it is an off duty status and I am relieved of

all responsibility for my truck and its cargo.").  The only difference between the sleeper berth and

the off-duty status is that drivers must be physically in the sleeper berth to record time as sleeper

berth.  Tillman Dec. ¶ 7.  However, as noted above, drivers are not required to use their truck's

sleeper berth and can simply record time as off-duty when not inside the sleeper berth.  COE #3.

When in the sleeper berth or off-duty status, PCMs engage in personal activities such as reading,

watching tv or movies, cooking and eating, and playing video games.  COE #13-14; *see, e.g.*,

Taylor Dec. ¶ 10 ("When I am in the sleeper berth status, I will sleep, cook and eat, watch tv, or

play video games on my X-Box I have in my truck."); Smith Dec. ¶ 10 ("When I was in the sleeper

berth status, I would sleep, cook and eat, watch tv, or play video games like Battlefield."); Anglin

Dec. ¶ 10 ("When I am in the sleeper berth status, I am usually either sleeping, playing a video

game, or listening to an audio book.").

 PCMs also confirm that they are free to leave their vehicle during time recorded as off-

duty and they are not required to attend to the truck or load.  COE #15-16.  For example, PCM

Anglin declares "I know I can leave if I want if I am in the off-duty status.  I could leave town in

an uber and come back later if I wanted to.  When I am in the off-duty status, I know that I am free

to leave and perform whatever activities I want."  Anglin Dec. ¶ 8.  PCM Dahl similar declares

"When I go off-duty, I am authorized to do whatever.  When I am in the off-duty status while out

on the road, I will park my truck and go to Walmart, go see a [movie] at a theater, or go a restaurant.

Sometimes I will go the Texas Roadhouse or the Longhorn Steakhouse in Fort Lewis, Washington

during off-duty time when I am nearby.  I will take a taxi to get there from my truck.  I also have

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 6

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1  family in Enumclaw, Washington that I will go visit during time recorded as off-duty.  I do not

2  need to stay with my load to do this.  Swift does not care what you do during off-duty time, as long

3  as you are back to the truck when it's time to go."  Dahl Dec. ¶ 7.

4       PCM testimony further confirms that drivers are not "on-call" during off-duty or sleeper

5  berth time.  COE # 17-18.  Several PCMs state that they are not required or expected to read or

6  respond to any messages coming in on their truck's on-board computer when in off-duty or sleeper

7  berth time.  COE # 17.  Likewise, PCMs also declare that they were not required or expected to

8  answer or respond to any phone calls from Swift personnel while on off-duty or sleeper berth time.

9  COE # 18.  PCMs can and do turn their phones and on-board computers off or the volume down

10  during off-duty and sleeper berth time so they cannot be disturbed.  COE # 19.

11  **D.    Swift's Compensation System**

12       Since at least April 21, 2020, most of Swift's Washington-resident employee drivers have

13  been primarily compensated on a per trip, piecework basis.  COE #20.  Most of Swift's employee

14  drivers are paid for each trip they complete based on a mileage rate multiplied by an estimated

15  number of miles for the trip found in a guide published by Rand McNally.  *Id.*  Swift understands

16  that it is common for drivers to work more than 40 hours in a week, so it sets the amount of mileage

17  based pay to include overtime compensation for expected overtime hours.  Rohwer Dec ¶ 3; Ellis

18  Dec. Ex. 2 at 20:5-20:18, 54:7-15.

19       Swift pays its drivers on a weekly basis and its wage statements describe the number of

20  hours PCMs recorded as on-duty (not driving) and driving during the pay period, which Swift

21  considers a driver's hours worked.  Rohwer Dec. ¶¶ 3, 5, Exs. 1, 3.  PCMs agree that their trip pay

22  compensates them for all of the time they record as either driving or on-duty (not driving) in their

23  hours of service logs.  COE #21.  PCMs are also eligible for several forms of additional pay, such

24  as detention pay for being delayed at a customer for more than two hours and stop pay for making

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 7

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1    additional stops in a trip.  Rohwer Dec. ¶ 4, Ex. 2.

2    **E.    Team Drivers and Mentors**

3    Some PCMs may drive with a team member.  COE #25.  When drivers work as a team,

4    one member of the driving team will typically sleep in the truck's sleeper berth while the other

5    drives.  *Id.*  Under the FMCSA's regulations, and Swift's policies, time other than sleeper berth

6    time in a moving vehicle with a team driver is to be recorded as on-duty (not driving time), except

7    that 2 hours riding as a passenger immediately before or after 8 hours of sleeper berth time may

8    be recorded as "off-duty" if the driver is not performing any work activities and is not in readiness

9    to work.  COE # 26.

10    Some PCMs work as driver mentors.  Giles Dec. ¶¶ 14-15; Williams Dec. ¶ 17; Tillman

11    Dec. ¶ 13.  For the first 50 hours of a mentee's driving, the driver mentor must provide supervision

12    and record all of the time as on-duty.[3]  *Id.*  After the mentee has driven for 50 hours, the mentee

13    can drive without supervision and the relationship works the same way as team driving, except the

14    mentor earns an additional $200 per week until the training is complete.  *Id.*

15    **III.    <u>ARGUMENT</u>**

16    Fed. R. Civ. P. 23(a) provides that a class can only be certified if the four conditions of

17    numerosity, commonality, typicality, and adequacy are met.  Under Rule 23(b)(3), a class action

18    demanding money damages may be certified only if "the court finds that the questions of law or

19    fact common to class members predominate over any questions affecting only individual members,

20    and that a class action is superior to other available methods for fairly and efficiently adjudicating

21    the controversy."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363.  "Rule 23 does not set forth

22

23

24    _____

[3] Mentees in training are paid a flat amount per week rather than mileage based trip pay and are therefore not part of the putative class of "drivers paid on a per mile basis." Ellis Dec. Ex. 2 at 15:1-15:2, 15:23-16:7.

a mere pleading standard," but rather "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.* at 350. "The trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

In order to certify a class, the court must find both that "there are questions of law or fact common to the class" under Rule 23(a), and separately that "the questions of law or fact common to class members predominate over any questions affecting only individual members" under Rule 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). While "a single significant question of law or fact" can satisfy commonality, "the predominance criterion is far more demanding." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "When evaluating predominance, a court has a duty to take a close look at whether common questions predominate over individual ones, and ensure that individual questions do not overwhelm questions common to the class." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018) (quotations omitted). Even then, a finding that "common questions predominate over any individual issues in this litigation…does not foreclose" a ruling "that a class action is inappropriate due to manageability concerns" under the superiority element. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 654 (C.D. Cal. 1996).

As set forth below, Plaintiff fails to satisfy his burden of demonstrating that all of the conditions of Rule 23 are satisfied.

**F.     Individual Choice of Law Questions Preclude Class Certification**

In the Ninth Circuit, individualized choice of law considerations defeat class certification. *Zinser*, 253 F.3d at 1190 (9th Cir. 2001); *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 9

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

918, 928 (9th Cir. 2019) ("potentially varying state laws may defeat predominance in certain circumstances").  Plaintiff's claim for unpaid overtime arises under Washington law, but whether each PCM had sufficient contacts with Washington such that Washington law applies to the alleged unpaid overtime wages is an individualized question.  Plaintiff's failure to submit any evidence or analysis on how choice of law issues can be resolved with common evidence requires denial of his motion for class certification (and such new argument or evidence should not be considered on reply).

   1. <u>Common Issues Do Not Predominate and Class Proceedings are not Superior as to Whether Putative Class Members Are "Washington-based" Employees</u>

  "A district court considering state law claims brought in federal court must utilize the choice-of-law rules of the forum state[.]"  *Senne*, 934 F.3d at 928 (9th Cir. 2019).  The overtime provisions of Washington's Minimum Wage Act (MWA) apply both within Washington and extraterritorially to the work of "Washington-based" truck drivers and that whether a driver is "Washington-based" depends "on factors that courts routinely use for deciding choice of laws issues."  *Bostain v. Food Exp., Inc.*, 159 Wash. 2d 700, 713 n. 5 (2007); *see also Slack v. Swift Transp. Co. of Arizona, LLC*, 2013 WL 6095548, at *2 (W.D. Wash. 2013) (Denying certification of class including over-the-road drivers and holding: "With regard to whether an employee was 'Washington based,' the [Washington Supreme] court held that the analysis 'will depend on factors that courts routinely use for deciding choice of laws issues.'"); *see also Sampson v. Knight Transportation, Inc.*, 2018 WL 2984825, at *3 (W.D. Wash. 2018)  ("[T]he [Washington Supreme] Court stated that whether a 'Washington-based' employee was subject to the MWA, was a question to be decided by traditional choice of law principles.").  In evaluating choice of law questions, Washington courts first decide whether there is "an actual conflict between the laws or interests of Washington and the laws or interests of another state."  *FutureSelect Portfolio Mgmt., Inc. v.*

1  *Tremont Grp. Holdings, Inc.*, 180 Wash. 2d 954, 967 (2014).  If a conflict exists, "Washington

2  uses the most significant relationship test as articulated by Restatement (Second) of Conflict of

3  Laws § 145 (1971)" to resolve it.  *Id.*

4        Under the Restatement test adopted by the Washington Supreme Court, "The rights and

5  liabilities of the parties with respect to an issue in tort are determined by the local law of the state

6  which, with respect to that issue, has the most significant relationship to the occurrence and the

7  parties under the principles stated in § 6."  Restatement (Second) of Conflict of Laws § 145.

8  "Contacts to be taken into account in applying the principles of § 6 to determine the law applicable

9  to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing

10 the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of

11 business of the parties, and (d) the place where the relationship, if any, between the parties is

12 centered.  These contacts are to be evaluated according to their relative importance with respect to

13 the particular issue."

14       In this case, Washington law conflicts with the law of other states because Washington's

15 neighboring states Oregon and Idaho have different overtime rules than Washington.  Oregon

16 exempts all drivers subject to FMCSA hours regulation from overtime, and Idaho has no overtime

17 laws at all.  Ore. Admin. Rule 839-020-0125(3)(a); Idaho Code § 44 *et seq.*  By contrast,

18 Washington's motor carrier overtime exemption is limited to drivers who are subject to federal

19 hours regulation and paid under a "compensation system" providing pay "reasonably equivalent"

20 to the overtime owed to non-exempt employees.  RCW 49.46.130(2)(f); *see Mendis v. Schneider*

21 *Nat'l Carriers, Inc.*, 2017 WL 497600, at *3 (W.D. Wash. 2017) ("an actual conflict exists because

22 Oregon law provides fewer protections to Oregon-based employees than Washington law provides

23 to Washington-based employees"); *see also Sampson v. Knight Transportation, Inc.*, 2018 WL

24

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 11

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

2984825, at *2 (W.D. Wash. 2018) ("Neither party disputes that the applicable Washington wage and hour laws conflict with the analogous laws of Oregon and Idaho").

Because an actual conflict of law exists, the Court must apply the Restatement factors to determine which state has the most significant interest in each PCM's claim. However, there are no uniform means to determine how the Restatement factors apply to each PCM and whether Washington law ultimately applies to their work. Plaintiff's analysis of the issue is limited to a citation to *Bostain* for the proposition that "Washington drivers are entitled to overtime under Washington law, whether driving inside or outside of Washington," but this is a gross oversimplification of the Washington Supreme Court's holding. *Bostain* was clear that Washington law applies extraterritorially only to the work for drivers who are "Washington-based" and that whether a driver is "Washington-based" depends on the traditional choice-of-law factors. *Bostain*, 159 Wash. 2d 700, 713 n. 5 (2007); *see also Slack*, 2013 WL 6095548 at *2 (W.D. Wash. 2013); *Sampson*, 2018 WL 2984825, at *3. In *Sanders v. Western Express*, 2022 WL 1800778, *7-9 (E.D. Wash. 2022), the court specifically rejected the argument that a driver's mere residence in Washington renders them "Washington-based" under *Bostain*. Given that is the totality of Plaintiff's argument here, there is no basis from which this court can conclude that the choice of law issue can be resolved "in one stroke" as to all PCMs.

While every PCM is a Washington resident, many spend very little worktime within Washington. COE #1. For a driver like Anglin who spends less than 5% of his driving time in Washington, it cannot be said that Washington is the place where the alleged injury occurred. Anglin Dec. ¶ 3. Swift's records also demonstrate many PCMs with over 90% of their work time outside Washington,[4] Crandall Dec. ¶ 10

---

[4] Plaintiff's theory that a driver is per se on-duty when more than 25 miles from their residence creates additional choice of law challenges, because a putative class member who lives near

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 12

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1    Additionally, many PCMs, and Plaintiff himself, are assigned to terminals outside

2  Washington even though they are Washington residents.  COE #2.  One PCM was assigned to a

3  terminal in Salt Lake City, Utah while residing in Washington.  Williams Dec. ¶ 2.  Swift drivers

4  receive their loads from and are managed by Swift personnel stationed at the terminals to which

5  they are assigned.  Tillman Dec. ¶ 4.  Therefore "the place where the conduct causing the injury

6  occurred" and "the place where the relationship, if any, between the parties is centered" is outside

7  Washington for these PCMs assigned to non-Washington terminals.  Restatement § 145.

8    Given the variation in how the Restatement factors apply to each PCM, there is no way to

9  determine whether Washington law applies to the putative class as a whole and Plaintiff has

10  submitted no evidence that will permit the Court to decide whether each PCM is subject to

11  Washington law without individualized analysis.

12    Where the headquarters of the Defendant employer is in another state has also led courts

13  to deny class certification.  *Ayala v. U.S Xpress Enterprises, Inc.*, 2016 WL 7586910, at *3-6 (C.D.

14  Cal. 2016) denied certification of a class of truck drivers where the defendants were headquartered

15  in Tennessee and made "all of their employment, payroll, and compensation decisions at that

16  location," even though many of the PCMs were California residents or employed full time in

17  California.  *Id.  Ayala* found that individual choice of law questions precluded class certification

18  and rejected the plaintiff's conclusory statement that "[t]he conflict-of-laws analysis involved in

19  this case will not introduce individualized questions."  *Id.* at *5.  The same is true here where Swift

20  is headquartered in Arizona, and makes all of their employment, payroll, and compensation

21  decisions at that location.  Tillman Dec. ¶ 2.

22

23

24  Washington's borders may never spend time more than 25 miles from their residence within
   Washington.  An individual driver-by-driver inquiry would be necessary.

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 13

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1    Indeed, as it applies to over-the-road drivers, this issue was already decided in *Slack v.*

2    *Swift Transp. Co. of Arizona, LLC*, 2013 WL 6095548 (W.D. Wash. 2013).  In *Slack*, the court

3    excluded all over-the-road drivers from a proposed class of drivers, including those assigned to

4    terminals in Washington, due to a lack of commonality on the choice of law question.  *Id.* at *3.

5    *Slack* found "[w]ith regard to the OTR drivers, the Court is not yet persuaded that common

6    questions of fact or law exist as to this proposed group" because some over-the-road drivers

7    assigned to a Washington terminal spent very little time working in Washington.  *Id.* at *3-4.  The

8    same is true here with respect to Plaintiff's proposed class of Washington resident drivers.  COE

9    #1.  At a minimum, the court should exclude over-the-road drivers from any certified class as it

10    did in *Slack*.

11    **G.    Plaintiff's Theory That Putative Class Members Are Not Exempt from Overtime**

12    **Cannot Be Certified Under Rule 23**

13    Plaintiff argues that common issues predominate because Swift generally does not pay

14    overtime compensation at 1.5 times the regular rate of pay to Washington resident drivers paid

15    piecework compensation for hours worked in excess of 40 in a week.  But in order to prevail on a

16    class wide basis, Plaintiff must show that each PCM is not exempt from overtime under RWC §

17    49.46.130(f).  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944-948 (9th Cir. 2009)

18    (individual issues as to the applicability of a wage and hour exempt defeats class certification).

19    Plaintiff is unable to make this showing with common evidence as to all PCMs.

20    "An employer is exempt from the MWA's overtime requirement if (1) their employee is a

21    truck driver subject to the Federal Motor Carrier Act, and (2) the 'compensation system under

22    which the truck driver or bus driver is paid includes overtime pay, reasonably equivalent to that

23    required by this subsection, for working longer than forty hours per week.'  This is known as the

24    reasonable equivalent overtime exemption ('REOT')."  *Sampson v. Knight Transportation, Inc.*,

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 14

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1  2022 WL 4598488, at *3 (W.D. Wash. 2022); *see also* RCW 49.46.130(2)(f).  There is no dispute

2  that the putative class consists of truck drivers who were at all times subject to the Federal Motor

3  Carrier Act.  COE #5.

4          Plaintiff's motion, however, assumes that drivers must receive "extra compensation for

5  hours worked over 40 hours per week" in order to qualify for this exemption, but this is an incorrect

6  statement of Washington law.  *See Dukes*, 564 U.S. at 351 (courts must decide merits issues in

7  ruling on class certification when they "overlap" with and are "enmeshed" in the Rule 23 analysis).

8          The court in *Helde v. Knight Transp., Inc.*, 982 F. Supp. 2d 1189, 1201-1202 (W.D. Wash.

9  2013) granted summary judgment to a motor carrier similar to Swift based on the RCW

10  49.46.130(2)(f) exemption and rejected Plaintiff's position that a motor carrier's "compensation

11  system is fatally flawed because there was no additional compensation paid for hours in excess of

12  forty."  The court held that "[t]he laws and regulations of Washington allow truck drivers to be

13  paid on a flat per mile basis, regardless of the number of hours worked in a week, as long as the

14  amount paid per mile is reasonably calculated to include compensation for both straight time and

15  time-and-a-half" and that Washington does not "require a separate, increased rate of pay or an

16  additional stipend for overtime hours as long as the pay structure provides the reasonable

17  equivalent of overtime pay." *Id.* 1201.  The court further rejected the plaintiff's argument that the

18  defendant motor carrier' "equivalence analysis is invalid because there was no pre-established

19  'base rate of pay' to give meaning to defendant's calculations," because the Washington

20  Department of Labor and Industries "has been willing to accept the hourly rate trucking companies

21  pay their local or short-haul drivers as the 'base rate of pay' for purposes of evaluating the

22  reasonable equivalence of a proposed alternative compensation system."[5]  *Id.*

23  _____

24  [5] Plaintiff's reliance on *Mynatt v. Gordon Trucking, Inc.*, 182 Wash. App. 253 (2014) is perplexing, as the Washington Court of Appeal held in that case that an employer may pay the reasonable equivalent of overtime and qualify for the RCW 49.46.130(2)(f) exemption with a uniform mileage

Other decisions from this district have reached the same conclusion as *Helde* and granted summary judgment to the defendant on claims by drivers for unpaid overtime.[6]  *See*, *e.g.*, *Mendis v. Schneider Nat'l Carriers Inc.*, 2016 WL 6650992, at *7 (W.D. Wash. 2016); *Sampson*, 2022 WL 4598488, at *2-3 ("[T]he Court GRANTS summary judgment to Defendants on the issue of whether they are exempt from the overtime requirement.").  Thus, the fact that Plaintiff's theory of class certification is legally incorrect requires denial of certification.  *See Burnell v. Swift Transportation Co of Arizona, LLC*, 2016 WL 2621616, at *2 (C.D. Cal. 2016).  Plaintiff does not provide any class-wide means by which to determine whether drivers are paid the reasonable equivalent of overtime under the correct legal standard.

Plaintiff also argues that Swift claiming the RCW 49.46.130(2)(f) exemption is "inherently in conflict" with its position that it pays compensation reasonably equivalent to overtime, but that again misunderstands the law.  Plaintiff's argument is nonsensical, because payment of the reasonable equivalent of overtime is necessary to establish the applicability of the exemption.  As

---

rate and without first establishing a separate base rate of pay for non-overtime work.  *Id.* at 264-265.  *Mynatt* further held that advance notice to drivers that their mileage rate includes the reasonable equivalent of overtime is not required and that "establishing a base rate of pay may be determined retrospectively."  *Id.* at 264-265.  Plaintiff citation to *Bostain v. Food Exp., Inc.*, 159 Wash.2d 700, 710 (2007) is also misplaced since the Washington Supreme Court did not address the RCW 49.46.130(1) exemption, and the sentence Plaintiff quotes referring to "extra compensation for hours worked over 40 hours per week" is clearly dicta.  In any event, *Bostain* simply used the term "extra compensation" to mean either actual overtime pay or the reasonable equivalent of overtime, and nothing about this phrasing is inconsistent with *Mynatt* and *Helde's* conclusion that the reasonable equivalent of overtime (i.e. "extra compensation") can be paid with a mileage rate that does not fluctuate based on hours worked.

[6] Plaintiff takes a few out of context quotations from one of Swift's Rule 30(b)(6) depositions to incorrectly argue that "Defendants have provided no evidence that their payment policy included any additional pay for anticipated overtime."  The Rule 30(b)(6) witness in question clearly testified that the reasonable equivalent of overtime ***is "calculated into the rates…[b]y considering their hours and the amount of overtime hours they -- they have."***  Ellis Dec., Ex. 2 at 20:5-20:18.  The witness also answered "Yes" to both questions "when Swift sets the mileage rate, does it take into account that the drivers are often going to be working overtime hours" and "is it fair to say that if the drivers were not regularly working overtime hours, Swift would set a lower mileage rate?"  *Id.* at 54:7-15.

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 16

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

the Washington Court of Appeal explained in in *Gen. Teamsters Loc. No. 174 ex rel. Gasca v. Safeway, Inc.*, 156 Wash. App. 1003, *5 (2010), "[t]he exemption would be pointless" if every driver employed by a defendant had to always receive an amount greater than or equal to the overtime pay Washington generally requires for non-exempt employees in order for the exemption to apply. *See also Sampson v. Knight Transportation, Inc.*, 2022 WL 4598488, at *3 (W.D. Wash. 2022) ("*Whether the Class is exempt* from overtime payment [under RCW 49.46.130(2)(f)] is a different question than what damages they would be entitled to *assuming they are not exempt.*") (original emphasis). Again, a class cannot be certified based on a misreading of the law.

The challenges Plaintiff faces in certifying such a class are multiplied because PCMs are paid on a piecework basis, and therefore each driver's effective hourly rate will necessarily fluctuate from week-to-week and differ from one another. Crandall Dec. ¶¶ 12- 13. Plaintiff had the burden of explaining how these individualized variations could be addressed as a class to resolve the REOT analysis, but failed to do so. Further complicating matters, the rates per mile paid for trips are not uniform and depend on the type of work, the length of the trip, and the PCM's particular level of experience. *Id.* ¶¶ 5-7. There are also variations in the amount of additional non-mileage based pay PCMs receive. *Id.* ¶ 8. Plaintiff proposes no class wide common mechanism for determining which PCMs received pay less than the reasonable equivalent of overtime and therefore Plaintiff's motion must be denied.

## H.    Plaintiff's Theory that PCMs Are Continuously Engaged in Compensable Work Time Cannot Be Certified Under Rule 23

Plaintiff's theory that the PCMs are always engaged in compensable work time whenever they are more than 25 miles from their residence is not amenable to class proceedings because it is contrary to the evidence, which Plaintiff has no means to resolve on a class-wide basis. Plaintiff

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 17

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

does not assert any claim that PCMs were not paid at least the minimum wage rate for all hours worked and relies exclusively on the overtime provisions of the MWA. Dkt. 1-5. Therefore, the question of whether PCMs are exempt from overtime would first need to be certified before even considering whether drivers were engaged in unrecorded compensable work that constitute overtime hours. As described above, the exemption issue is not certifiable, which is fatal to Plaintiff's attempt to certify a class based on his theory of unrecorded overtime hours.

Regardless, Plaintiff's position that every minute of every day that PCMs spend more than 25 miles from their home is compensable is not an issue that meets the commonality, predominance, and superiority elements of Rule 23.

> 1. Common Issues Do Not Predominate and Class Proceedings Are Not
>    Superior as to Whether Putative Class Members had Unrecorded
>    Compensable Time

Wash. Admin. Code (WAC) § 296-126-002(8), defines "hours worked" as "all hours during which the employee is authorized or required by the employer *to be on duty* on the employer's premises or at a prescribed work place." (emphasis added). The Washington Supreme Court has held WAC § 296–126–002(8) sets forth "the appropriate standard" for determining compensable time under the MWA. *Stevens v. Brink's Home Sec., Inc.*, 162 Wash. 2d 42, 47 n. 1; *see also Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036, 1047 (W.D. Wash. 2011).

Swift's policies and federal law require that a driver must be relieved of all work responsibilities and of being in readiness to work in order to record their time as off-duty or sleeper berth. Thus, a driver cannot be "authorized or required by the employer to be on duty" during time recorded as off-duty or sleeper berth. WAC § 296–126–002(8). Plaintiff's contention that even off-duty and sleeper berth time is compensable under Washington law cannot be proved without individual inquiries into whether particular PCMs misrecorded their hours of service. Plaintiff has

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 18

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1    submitted no evidence of any uniform policy or practice of PCMs being on-duty during time

2    recorded as off-duty or sleeper berth.  Indeed, the only evidence is that PCMs understood that they

3    were free from all responsibility during off-duty and sleeper berth time and could and did leave

4    Swift's vehicles during off-duty to time to perform personal activities of their choosing.  COE #9-

5    16.

6            Courts have declined to certify classes in cases analogous to this one.  In *Pavloff v. Cardinal*

7    *Logistics Mgmt. Corp.,* 2020 WL 6821072, *6 (C.D. Cal. 2020), the court denied class certification

8    in a case against a carrier alleging sleeper berth time is compensable under California law, because

9    "the fact that a driver logged time as 'sleeper berth' does not necessarily mean he or she is entitled

10   to compensation for that time" and "determining whether "sleeper berth' time is compensable

11   would require an individualized inquiry into how each proposed class member spent their 'sleeper

12   berth' time."  California law is stricter than Washington's in defining hours, because it includes

13   all time "an employee is subject to the control of an employer" or "is suffered or permitted to

14   work." *See Huerta v. CSI Elec. Contractors*, 15 Cal. 5th 908, 918 (2024).  Therefore, if denial of

15   class certification was proper in *Pavloff*, it is *a fortiori* proper here.  This court in *Ginsburg v.*

16   *Comcast Cable Commc'ns Mgmt. LLC*, 2013 WL 1661483, at *7 (W.D. Wash. 2013) also denied

17   class certification in a case alleging unpaid compensable worktime when, as here, "Plaintiffs

18   suggest no classwide means of determining when each class member" was engaged in

19   compensable work.  *See* Crandall Dec. ¶¶ 9-11.

20                    *(a)    29 C.F.R § 785.22 Does Not Support Class Certification*

21           Plaintiff relies on a federal Department of Labor regulation in support of his position that

22   all time away from home is compensable, but the regulation does not say what Plaintiff claims.  29

23   C.F.R § 785.22(a) provides: "Where an employee is required to be on duty for 24 hours or more,

24   the employer and the employee may agree to exclude bona fide meal periods and a bona fide

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB -  19

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." Plaintiffs take this to mean that for long-haul or over-the-road drivers, only 8 hours of sleep time each day may be excluded from hours worked, and only with an agreement. However, 29 C.F.R. § 785.22(a) applies only "[w]hen an employee *is required to be on duty for 24 hours or more*." (emphasis added). Because time recorded as off-duty and sleeper berth is not "on-duty," nor required by Swift to be on-duty, § 785.22's 8 hour limitation on the deductibility of sleep time from hours worked simply does not apply. *See*, *e.g. Bouissey v. Swift Transportation Co.,* 2023 WL 3400620, at *9-10 (C.D. Cal. 2023) ("Assuming for the sake of argument that section 785.22 applies to this case, it does not say what Plaintiffs claim."); *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, *5-7 (D. Neb. 2017); *Kennedy v. LTI Trucking Servs., Inc.*, 2019 WL 4394539, *3-6 (E.D. Mo. 2019); *Blodgett v. FAF, Inc.*, 446 F. Supp. 3d 320, 326-329 (E.D. Tenn. 2020). Indeed, *Nance v. May Trucking Co.*, 2014 WL 199136, *6-8 (D. Or. 2014) granted summary judgment to the motor carrier employer where the plaintiffs argued that the DOL regulations makes sleep time in a moving vehicle compensable based on 29 C.F.R. § 785.21. 29 C.F.R. § 785.21 is very similar to 29 C.F.R. § 785.22 and provides "[a]n employee who is *required to be on duty* for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." *Nance* held that 29 C.F.R. § 785.21's presumption of work while being permitted to sleep applies only when a driver is "required to be on duty," and 29 C.F.R. § 785.41 establishes that sleeper berth time for truck drivers is not on-duty. *Nance*, 2014 WL 199136 at *8. *Nance* was affirmed by the Ninth Circuit on this point, albeit in an unpublished decision. *See Nance v. May Trucking Co.,* 685 F. App'x 602, 605 (9th Cir. 2017).

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 20

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1    The district court decisions relied on by Plaintiff misread the applicable regulations.  For

2  example, *Julian v. Swift Transportation Co. Inc.*, 360 F. Supp. 3d 932, 944-52 (D. Ariz. 2018)

3  involved *trainee* drivers only, and assumed throughout its decision that trainee drivers were "on-

4  duty" 24 hours a day for purposes 29 C.F.R. § 785.22(a) without once explaining what this

5  assumption was based on.  *Julian* held that 29 C.F.R. § 785.22(a) qualifies 29 C.F.R. § 785.41

6  limits the amount of off-duty sleeper berth to 8 hours a day, but this interpretation misses that 29

7  C.F.R. § 785.22 permits up to 8 hours of on-duty sleep time to be excluded from compensable time

8  by agreement only "[w]here an employee *is required to be on duty of 24 hours or more*."  29 C.F.R.

9  § 785.41 defines when sleep time in a moving vehicle is "on-duty" in the first place.

10    Here, for the most part, we are not dealing with a moving vehicle – unless the driver is

11  driving as part of a team; the vehicle is necessarily stopped (one would hope) when the driver is

12  in the sleeper berth – and there is no policy requiring PCMs to be on-duty for 24 hours.  The other

13  decisions cited by Plaintiff make the same error as *Julian* and arose on motions to dismiss or for

14  judgment on the pleadings, where the court was required to accept the plaintiff's factual allegation

15  that drivers are on-duty during sleeper berth time as true.  *Wooldridge v. Gateway Transportation*

16  *of Georgia, Inc.*, 2019 WL 2610904, at *4 (N.D. Ga. 2019); *Browne v. P.A.M. Transp., Inc.*, 2018

17  WL 5118449, at *1 (W.D. Ark. 2018).  *Sanders v. Western Express*, 2022 WL 1800778, *4 (E.D.

18  Wash. 2022) did not express any opinion on the subject at all and merely noted the split in district

19  court authority.

20    29 C.F.R. § 785.22 therefore does not support class certification because PCMs would first

21  have to be required to be on-duty, which they are not.  PCMs testify that they were free to leave

22  their trucks during off-duty time and engaged in personal activities like eating at a restaurant, doing

23  laundry, and watching a movie.  COE #9, 13, 15-16.  PCMs also agree that they were not required

24  to spend the night in their truck's sleeper berth and could stay at a hotel or with family and friends,

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 21

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

or go home.  COE #3-4. When PCMs do spend the night in the sleeper berth, they do non-work related activities like sleep, play video games, and read.  COE #14.  PCMs are also able to and do turn their phones and on-board computers off or the volume down so they are not interrupted during sleeper berth and off-duty time.  COE #17-19.  To the extent any PCM was on-duty during time recorded as off-duty or sleeper berth, it can only be determined on an individual case-by-case basis.

(b)    *Stevens v. Brink's Home Security, Inc. Does Not Support Class Certification*

Plaintiff also relies extensively on the Washington Supreme Court's decision in *Stevens v. Brink's Home Sec., Inc.*, 162 Wash. 2d 42 (2007) to support his motion.  *Stevens* is entirely inapposite.  In *Stevens*, the Washington Supreme Court held that local drivers who had the option of taking their company assigned vehicle home and using it to drive to their first jobsite of the day were engaged in compensable hours worked when driving to the first jobsite.  *Id.* at 48-49.  The court reasoned that because "[d]riving the trucks is an integral part of the work performed by" the plaintiffs, and **because they were "performing company business during the drive time,"** they "were 'on duty' at a 'prescribed work place' during the drive time."  In this case, Swift does not dispute that time spent driving on company business is hours worked—and there is no dispute that all such time is paid.  The issue is whether time during which PCMs are free from Swift's control, and are free to leave Swift's vehicles to do whatever they wish, is compensable.  When a driver is driving for company business or performing any other work related activities, the time is recorded in the compensable driving or on-duty (not driving) statuses, consistent with *Stevens*.[7]  COE #12

---

[7] Swift drivers may use the personal conveyance status to drive their Swift truck for personal activities while remaining off-duty, but the personal conveyance status cannot be used to advance a load or perform company business in any way.

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 22

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1  When a PCM is off-duty or in sleeper berth they are not working, but are instead free to do

2  whatever they please, and are not required to be on-duty.  COE #9-10, 13-16.

3        To the extent Plaintiff is arguing that it may be practically difficult to go home or stray far

4  from a truck while working over the road, such practical limitations not imposed by an employer

5  does not render off duty-time compensable.  *See*, *e.g.*, *Anderson v. State, Dep't of Soc. & Health*

6  *Servs.*, 115 Wash. App. 452, 455-457 (2003) (time spent on employer provided ferry to get to

7  island worksite is not compensable or "on duty"); *Bouissey*, 2023 WL 3400620, at *7 (C.D. Cal.

8  2023) (under stricter California law, off duty and sleeper berth time not compensable where "the

9  geographic constraints Plaintiffs complain of…arise primarily as a consequence of practical

10  realities and not Defendant's exercise of control").

11        Absent a common policy or practice demonstrating that Swift authorized or required PCMs

12  to be on-duty, this claim is not capable of class-wide resolution.

13      2.    <u>Common Issues Do Not Predominate and Class Proceedings Are Not</u>

14                    <u>Superior as to Whether PCMs Were Paid Less than the Amounts Required</u>

15                    <u>by Washington Law</u>

16        Because Plaintiff's complaint does not include any wage claims other than failure to pay

17  overtime, the court cannot certify a class based on any theory that Swift violated the minimum

18  wage provisions of the MWA. Dkt. 1-5.  If Plaintiff wishes to pursue this theory he must first seek

19  leave to amend the complaint and permit Swift to conduct discovery on the unpleaded theory.

20        To the extent the court considers an argument that Swift failed to comply with the minimum

21  wage provisions of the MWA and Plaintiff is able to demonstrate that all off-duty and sleeper berth

22  time away from home is compensable, class certification should still be denied.  Under Washington

23  law, a non-agricultural employer who pays on a piecework basis satisfies the minimum wage

24  provisions of the MWA when all pay to an employee for a workweek divided by all hours worked

for the employee in that week exceeds the minimum wage rate.  Wash. Admin. Code § 296-126-

021; *Sampson v. Knight Transportation, Inc.*, 193 Wash. 2d 878, 893 (2019) ("WAC 296-126-021 implements the MWA and allows employers to use workweek averaging to measure compliance with the MWA for nonagricultural workers paid on a piecework basis."). Therefore, even if PCMs are "on-duty" 24 hours a day, 7 days a week while on the road, there is no MWA violation so long as their average rate of pay in a week exceeds the Washington minimum wage multiplied by 24 and again by 7.[8] Plaintiff has not described how he plans to show that the PCMs' pay fell below the legal minimum without resort to individualized analysis of each driver and each workweek.

Furthermore, the DOL regulation Plaintiff relies on permit a deduction of 8 hours of sleeping time as well as meal time from otherwise compensable on-duty time where there is an "expressed or implied agreement" to deduct such time. Here, Swift sleeper berth policies state that "[u]nder 29 CFR 785.22, if applicable, hours worked excludes 30 minutes off-duty breaks and 8 hours of sleeper berth time," which constitutes either an express or implied agreement to exclude up to 8.5 hours from compensable on-duty time. Tillman Dec. Exs. 1, 3. Plaintiff has not told the court how it can decide if each PCM's pay in any given week was less than the Washington minimum wage multiplied by 15.5 or 16 hours per day worked.

## IV.   CONCLUSION

Plaintiff's motion for class certification should be denied, because common issues do not predominate and class proceedings are not superior as a result of individual choice of law issues, individual issues as to whether PCMs are exempt from overtime, and the lack of any class-wide evidence that the putative class were authorized or required to work when in off duty or sleeper berth status.

---

[8] For days in which a PCM has no on-duty (not driving) or driving time at all, and therefore performed no work, Plaintiff has no plausible theory for how time for that day is compensable.

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 24

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100

1  DATED: October 25, 2024

2                                            SHEPPARD, MULLIN, RICHTER &
                                             HAMPTON LLP
3

4
                                             By:          /s/ John Ellis
5                                                  Paul S. Cowie, *pro hac vice*
                                                   John Ellis, *pro hac vice*
6                                                  Nina Montazeri, *pro hac vice*
                                                   Four Embarcadero Center, 17th Floor
7                                                  San Francisco, CA 94111-4109
                                                   Telephone: (415) 434-9100
8                                                  Facsimile: (415) 434-3947
                                                   Email: pcowie@sheppardmullin.com
9                                                         jellis@sheppardmullin.com
                                                          nmontazeri@sheppardmullin.com
10
                                                   Attorneys for Defendant SWIFT
11                                                 TRANSPORTATION CO. OF ARIZONA, LLC

   DATED: October 25, 2024
12

13                                           DLA PIPER LLP (US)

14

15                                           By:          /s/ Anthony Todaro
                                                   Anthony Todaro, WSBA No. 30391
16                                                 701 Fifth Avenue, Suite 6900
                                                   Seattle, Washington 98104-7029
17                                                 Telephone: (206) 839-4800
                                                   Facsimile: (206) 839-4801
18                                                 Email: anthony.todaro@dlapiper.com

19
                                                   Attorneys for Defendant SWIFT
20                                                 TRANSPORTATION CO. OF ARIZONA, LLC

21

22

23

24

## <u>CERTIFICATION OF WORD COUNT</u>

I certify that this memorandum contains 7,873 words, in compliance with the Local Civil Rules.

DATED: October 25, 2024

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP


By:      _/s/ John Ellis_
Paul S. Cowie, *pro hac vice*
John Ellis, *pro hac vice*
Nina Montazeri, *pro hac vice*
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email:  pcowie@sheppardmullin.com
        jellis@sheppardmullin.com
        nmontazeri@sheppardmullin.com

Attorneys for Defendant SWIFT
TRANSPORTATION CO. OF ARIZONA, LLC

DEF. SWIFT'S OPPOSITION TO PLTF'S MOTION
FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-5722-RJB - 26

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111 | Tel. 415.434.9100